UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALYSSA ASHLEY STANLEY,

               Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

               Defendant.

_____/

Case No. 20-11678

Curtis Ivy, Jr.
United States Magistrate Judge

## OPINION AND ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 17)

Plaintiff Alyssa Ashley Stanley ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act").[1] This matter has been referred for consent jurisdiction under 28 U.S.C. § 636(c) for determination of Plaintiff's motion for summary judgment (ECF No. 14), the Commissioner's cross-motion for summary judgment (ECF No. 17), Plaintiff's reply (ECF No. 18), and the administrative record (ECF No. 8).

---

[1] Plaintiff filed but later withdrew an application for Supplemental Security Income ("SSI").

For the reasons that follow, Plaintiff's motion for summary judgment (ECF No. 14), is **DENIED** and the Commissioner's motion for summary judgment (ECF No. 17) is **GRANTED**, affirming the Commissioner's decision.

## I.     DISCUSSION

### A.     Background and Administrative History

Plaintiff alleges disability as of September 27, 2017.  (ECF No. 8-7, PageID.694).  She was 28 at the time of the alleged onset date.  (*Id.*).  She filed an application for DIB on October 10, 2017.  (*Id.*).  She alleges disability as a result of depression and anxiety.  (ECF No. 8-8, PageID.717).  Her application was initially denied on December 11, 2017.  (ECF No. 8-6, PageID.617).

Following denial of her application, Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"), held March 14, 2019.  (ECF No. 8-2, PageID.137).  Plaintiff, represented by attorney Grant Felbaum, testified (*Id.* at PageID.142), as did vocational expert ("VE") James M. Fuller.  (*Id.* at PageID.161).  On July 3, 2019, ALJ Christopher J. Mattia found that Plaintiff was not disabled.  (*Id.* at PageID.133).  On April 20, 2020, the Appeals Council declined to review ALJ Mattia's determination.  (*Id.* at PageID.42).  Plaintiff filed suit in this Court on June 24, 2020.

## B.     Plaintiff's Medical History

Because Plaintiff does not argue that the ALJ erred in assessing her physical conditions, the Court's discussion of the medical evidence is limited to the alleged psychological limitations.

August 2016 treating records note the diagnoses of dysthymic disorder, depression, insomnia, post-concussion syndrome, and a neurocognitive disorder. (*Id*. at PageID.838).  Psychiatric records from the next month note an appropriate affect with appropriate thought content and speech with full orientation.  (*Id*. at PageID.842).  Plaintiff exhibited adequate concentration and memory but impulsive judgment and only fair insight.  (*Id*.).  Terry Whyte Jr., N.P., noted Plaintiff was "doing well" with her current medication and re-prescribed Trazodone, Klonopin, and Celexa.  (*Id*. at PageID.843).  Counseling notes from the following month by Pamela J. Griffin, M.A. L.L.P., reference Plaintiff's report that she became agitated at work and due to previous absences was not able to obtain leave time.  (*Id*. at PageID.850).  November 1, 2016 records by N.P. Whyte suggest intact memory and concentration.  (*Id*. at PageID.868).  The next day, Griffin noted Plaintiff's report that she did not feel well-suited to her job.  (*Id*. at PageID.876).  Plaintiff reported two panic attacks every month.  (*Id*.).  On November 16, 2016, Plaintiff reported that she was considering voluntary inpatient therapy.  (*Id*. at PageID.884).

On November 25, 2016, Plaintiff began a voluntary seven-day inpatient hospitalization for worsening depression and suicidal ideation. (ECF No. 8-9, PageID.780). She exhibited appropriate behavior but was tearful at the time of admission. (*Id*. at PageID.798). She was discharged in stable but guarded condition. (*Id*.). She was advised to follow up with "day hospital/partial hospital" treatment. (*Id*.). She was discharged from the partial hospitalization program on December 9, 2016, after successfully completing treatment. (*Id*. at PageID.808). She reported mild symptomology. (*Id*. at PageID.812, 816, 828). She reported a good relationship with her family, partner, and coworkers. (*Id*. at PageID.825). She appeared "cheerful, engaging, and motivated" with above-average intelligence. (*Id*.). Notes by Ms. Griffin the following week provide that a medication change made during inpatient treatment was "helpful." (*Id*. at PageID.892).

January 2017 records by N.P. Whyte note an appropriate affect and mood with normal memory and concentration. (*Id*. at PageID.901). March 2017 records indicate that Plaintiff felt "overwhelmed with the direct communication part of her job and becomes extremely anxious about having to interact with others." (*Id*. at PageID.936). The following month, Plaintiff reported that her job was going "okay" but that she was looking for a transfer or promotion. (*Id*. at PageID.944). In June 2017, N.P. Whyte noted an appropriate affect. (*Id*. at PageID.963). Ms. Griffin's records from the same month note Plaintiff's report of fatigue and that

she was looking for a new job.  (*Id*. at PageID.974).  September 2017 records by Margaret Hall Noger, P.A., note Plaintiff's report of worsening depression and anxiety.  (ECF No. 8-10, PageID.1182).  Plaintiff appeared fully oriented with an anxious mood.  (*Id*. at PageID.1184).  October 2017 records by Donna Marie Sutton, N.P., note mildly anxious and dysphoric mood with appropriate judgment, memory, and concentration.  (*Id*. at PageID.1038).  Counseling notes from the same month state that Plaintiff "decided to quit her job because she was no longer able to work or get additional leave time."  (*Id*. at PageID.1104).  She reported "minimal motivation" and stress related to "a very busy weekend with some family visiting and having to attend some large gatherings and attend a very hectic craft show with family."  (*Id*. at PageID.1114).

On December 7, 2017 Jerry Csokasy, Ph.D., performed a non-examining review of the treating and consultative medical evidence, finding that Plaintiff experienced only mild psychological limitation as a result of depression and anxiety.  (ECF No. 8-5, PageID.602).  He concluded that while the psychological conditions "could reasonably be expected to produce the alleged symptoms . . . the intensity of the symptoms and their impact on functioning [were] not consistent with the totality of the evidence."  (*Id.* at PageID.604).

The same month, N.P. Sutton observed that Plaintiff was calm, cooperative, and fully oriented with good insight and judgment.  (ECF No. 8-10, PageID.1125).

Plaintiff reported that she was doing well on her current medication. (*Id*. at PageID.1126). Later in the month, Plaintiff reported stress due to the need to find a disability lawyer and filling out forms related to her disability claim. (*Id*. at PageID.1136).

In January 2018, Ms. Griffin completed a psychiatric/psychological impairment questionnaire (also signed by Michael Gotlib, M.D.) finding that as a result of depression and agoraphobia with panic disorder, Plaintiff experienced depression, anxiety, autistic thinking, concentrational difficulties, agitation, and paranoia. (*Id*. at PageID.1149-50). Griffin also noted "difficulty interacting with others . . . and picking up on social cues." (*Id*. at PageID.1151). She found that "any change in workplace or job duties or coworkers or noise level" would result in decompensation or deterioration. (*Id*. at PageID.1151). Griffin found marked limitation in the ability to work in coordination with others; complete a workday without psychological disruption; accept criticism; and respond appropriately to workplace changes. (*Id*. at PageID.1152). She found that Plaintiff would miss three days of work each month due to psychological impairment. (*Id*. at PageID.1153).

In March 2018 Plaintiff reported that she had become engaged. (ECF No. 8-13, PageID.1501). Counseling records also note Plaintiff's report of failing to bathe more than once every two to three days. (ECF No. 8-12, PageID.1511).

Records from the same month note that Plaintiff attended a musical and visited her family at Easter.  (ECF No. 8-11, PageID.1469).  In June 2018, Kaila Thelen-Hartman, P.A., noted a mildly dysphoric mood with normal memory and concentration but poor judgment.  (ECF No. 8-13, PageID.1607).  Physical treating records from the same month note a normal mood and affect.  (ECF No. 8-10, PageID.1109).  Counseling notes from the same month state that she played mini golf but was "triggered" at the grocery store when the cashier failed to pack the groceries correctly.  ((ECF No. 8-11, PageID.1439).  July 2018 records state that Plaintiff was much less anxious since leaving work but was afraid that her improvement could be used to show she was not disabled.  (*Id*. at PageID.1371).  August and September 2018 records state that Plaintiff and her girlfriend obtained a marriage license and were planning to move out of the area.  (*Id.* at PageID.1349, 1360).  December 2018 counseling records by Sandra Benaway, M.A. L.L.P., note that Plaintiff was tearful.  (*Id*. at PageID.1311).  Plaintiff reported that she became "easily overwhelmed with noise and commotion."  (ECF No. 8-13, PageID.1707).

Counseling records from January 2019 state that Plaintiff was married the same month.  (ECF No. 8-11, PageID.1279).  Plaintiff denied panic attacks for the past three months but reported continued anxiety.  (*Id.*).  P.A. Thelen-Hartman noted normal memory and concentration but poor judgment.  (*Id*. at PageID.1291).

In March 2019, Plaintiff reported difficulty filling out paperwork to continue long-term disability provided by her former employer. (ECF No. 8-13, PageID.1706). In June 2019, P.A. Noger completed a treating source questionnaire, finding that Plaintiff could sit, stand, or walk for a total of six hours in an eight-hour workday. (ECF No. 8-11, PageID.1208). She found that Plaintiff could perform manipulative activity frequently. (*Id*. at PageID.1209). She found that Plaintiff would be absent from work less than once a month. (*Id*. at PageID.1210).

### C. The Hearing Testimony

#### 1. Plaintiff

Plaintiff offered the following testimony.

She was born November 23, 1988. (ECF No. 8-2, PageID.142). She completed high school and received a certificate in kitchen and bath design. (*Id.*). She was disabled as a result of anxiety and a depressive disorder. (*Id*. at PageID.143). Her past work included jobs as an order clerk for a pharmacy. (*Id.*). In the former work, she did not experience problems working with computers and worked at an acceptable pace. (*Id*. at PageID.148).

The condition of depression was worse in the winter, but she experienced symptoms of depression almost every day all year. (*Id*. at PageID.152). Symptoms included crying spells and lack of motivation, energy, and focus. (*Id*. at PageID.153). She became "overwhelmed and confused" completing the

application for DIB. (*Id*. at PageID.154). She was unable to sustain concentration for extended periods. (*Id*. at PageID.155). The condition of anxiety caused her to overreact to loud noises. (*Id*.). Symptoms ranged from a generalized feeling of anxiety to full-blown panic attacks. (*Id*. at PageID.156). Therapy and medication reduced the number of panic attacks to a few times a month. (*Id*.). The anxiety attacks were triggered by "noises, screaming, shouting," and arguing. (*Id*.). Her condition had deteriorated to the point where she was unable to leave the house without being accompanied by her wife. (*Id*. at PageID.157). She also experienced weekly headaches. (*Id*.). The headaches began after she experienced a concussion in 2016. (*Id*. at PageID.158-159). She opined that her psychological condition worsened after the concussion. (*Id*. at PageID.160).

## 2. The Vocational Expert

VE Fuller classified Plaintiff's past relevant work as an order clerk as semiskilled and exertionally light (sedentary as actually performed). (*Id*. at PageID.162). The ALJ then described a hypothetical individual of Plaintiff's age, education, and work history:

> Please . . . assume that the individual can perform work in a moderate noise intensity level environment. The individual can carry-out simple instructions, make simple work-related decisions, occasionally interact with supervisors and co-workers, but never perform tandem or team tasks, never interact with the public, and occasionally deal with changes in a routine work setting.

(*Id*. at PageID.162-163).

The VE testified that the hypothetical individual would be unable to perform Plaintiff's past relevant work but could perform the unskilled work of a sorter (200,000 jobs in the national economy at the medium level and 220,000/light); assembler (100,000/light); and inspector (100,000/light). (*Id*. at PageID.163). The VE stated that his testimony was not inconsistent with the information found in the *Dictionary of Occupational Titles* ("*DOT*") or its companion publications. (*Id*.). He testified that the need to be off task more than 10 percent of the workday (in addition to customary breaks) would be work preclusive. (*Id*. at PageID.163-164).

In response to questioning by Plaintiff's attorney, the VE testified that if the hypothetical individual were unable to maintain concentration due to being distracted by coworkers for one third of the workday, or was unable to get along with others or accept criticism, all competitive employment would be eliminated. (*Id*. at PageID.164). He testified that the need to miss three days of work each month would also preclude a competitive work. (*Id*.).

## D.    The Administrative Decision

Pursuant to 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), at **Step 1** of the sequential evaluation process, ALJ Mattia found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of September 27, 2017. (ECF No. 8-2, PageID.122). At **Step 2**, the ALJ found that Plaintiff had the following severe impairments: "dysthymic disorder, major depressive disorder,

10

anxiety disorder, agoraphobia with panic disorder, migraine headaches, and cluster headaches." (*Id*. at PageID.122). He found that the conditions of obesity, hypertension, and dyslipidemia were non-severe. (*Id*. at PageID.123). At **Step 3**, the ALJ found that Plaintiff did not have an impairment that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.). The ALJ found mild limitation in the area of understanding, remembering, or applying information and moderate limitation in interacting with others; concentration, persistence, or pace; and adapting and managing oneself. (*Id*. at PageID.124). He noted that Plaintiff was able to live in "an independent setting without extraordinary psychosocial support." (*Id*. at PageID.125).

Between **Steps 3 and 4** of the sequential process, the ALJ determined that Plaintiff had the Residual Functional Capacity ("RFC") to work at all exertional levels with the following non-exertional limitations:

> [T]he claimant can perform work in a moderate noise intensity level environment. The claimant can carry out simple instructions, make simple work-related decisions, and occasionally deal with changes in a routine work setting, but can never perform tandem or team tasks. The claimant can occasionally interact with supervisors and co-workers, but never interact with the public.

(*Id*. at PageID.125). At **Step 4**, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id*. at PageID.131). At **Step 5**, considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff

could perform including the unskilled jobs of sorter, *DOT* #222.687-014; assembler, #739.687-030; and inspector, #222.687-042. (*Id*. at PageID.132). The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since the alleged onset date of September 27, 2017. (*Id*.).

## E.   FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920.[2] The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs

---

[2] Citations to the regulations or Social Security Rulings are to those effective on the date of the application for disability benefits or the ALJ's decision, where appropriate, unless indicated otherwise.

existing in the national economy." *Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984).

## F.     Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. at 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. at 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).  In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### G. Analysis

Plaintiff makes three arguments in favor of remand, contending first that the ALJ failed to "properly evaluate" the opinion evidence. (ECF. No. 15). She argues second that the ALJ erred by discounting her claims of limitation. Third, she contends that because the ALJ's hypothetical question to the VE did not reflect her full degree of psychological limitation, the corresponding job findings do not constitute substantial evidence in support of the Step Five determination.

1. Evaluation of the Opinion Evidence

Plaintiff argues first that the ALJ erred by declining to credit the opinion of treating therapist Ms. Griffin, cosigned by psychiatrist Dr. Gotlib ("Griffin/Gotlib opinion") and instead relying on P.A. Noger's opinion. (ECF No. 15, PageID.1798-1805). In turn, the Commissioner argues that the ALJ provided adequate and well supported reasons for rejecting the Griffin/Gotlib opinion. (ECF No. 17, PageID.1821). In reply, Plaintiff faults the ALJ's reliance on the mental status exams showing largely normal findings, arguing that "mental status exams are always going to show at least some normal findings unless the claimant is floridly psychotic." (ECF No. 18, PageID.1836).

For the period under consideration, the ALJ will assess both treating and non-treating medical evaluations based on how well they are supported by the remainder of the record. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources"). The factors to be considered in evaluating medical opinions include supportability and consistency with the record as a whole; relationship with the claimant; length of the treatment relationship; frequency of examinations; purpose and extent of the treating relationship; whether the source has examined the claimant; specialization; and any other factors that support or

undermine the medical opinion.  §§ 404.1520c(c), 416.920c(c).  ALJs must articulate the "most important factors of supportability and consistency" of the medical opinions but "are not required to . . . explain" the consideration given to the remaining factors.  §§ 404.1520c(a-b); 416.920c(a-b).

The ALJ discussed the Griffin/Gotlib opinion at length, acknowledging the findings of marked limitations in interacting with others and in concentration but found the opinion "not persuasive."  (ECF No. 8-2, PageID.128-130) (citing ECF No. 8-10, PageID.1152).  The ALJ also rejected Dr. Csokasy's non-examining conclusion that the psychological impairments would not create any significant degree of workplace limitation, noting that Dr. Csokasy did not have benefit of the records from January 2018 forward.  (*Id.* at PageID.130).  The ALJ endorsed P.A. Noger's June 2019 assessment that Plaintiff would not be expected to miss more than one day of work each month or take unscheduled breaks.  (*Id.*) (citing ECF No. 8-11, PageID.1208).  The ALJ's assessment of the medical opinions is directly prefaced by a five-page discussion of Plaintiff's treatment history.  (*Id*. at PageID.126-130).

The ALJ's assessment of the medical opinion evidence is adequately articulated.  *See* §§ 404.1520c(a-b); 416.920c(a-b).  The ALJ found the Griffin/Gotlib opinion unpersuasive because "it [was] neither well supported by explanation, nor consistent with the longitudinal evidence including the generally

16

consistent findings upon mental status examination during the adjudicatory period." (*Id*. at PageID.130). He cited August 2017 examination records showing Plaintiff was "calm and cooperative" with an only mildly anxious mood, appropriate affect, and normal memory. (*Id*. at PageID.127). He also cited October and December 2017 records showing only mild dysphoria and anxiety with a calm and cooperative demeanor. (*Id*. at PageID.128). The ALJ noted that the records created following the January 2018 opinion also reflected less than marked psychological limitation. (*Id*.). He observed that Plaintiff was able to sustain a romantic relationship, make plans to relocate to another area, and strategize as to how to receive maximum health and disability benefits. (*Id*. at PageID.129). He found that while Plaintiff's psychological limitations were "significant," they did not preclude a range of unskilled work. (*Id*. at PageID.130).

The ALJ's rejection of the Griffin/Gotlib opinion and endorsement of P.A. Noger's opinion is supported by the Court's review of the transcript. October 2017 counseling notes indicate that Plaintiff voluntarily quit her job after failing to obtain more leave days. (ECF No. 8-10, PageID.1104). N.P. Sutton's mental status exam from the same month shows appropriate judgment, memory, and concentration. (*Id*. at PageID.1038). December 2017 mental status exam records note similar findings. (*Id*. at PageID.1126). March, June, August, and September 2018 records indicate that Plaintiff was able to attend a musical, visit with family

members, play mini golf, and was aware of how the information in her treating records could affect her entitlement to disability benefits. (ECF No. 8-13, PageID.1501), (ECF No. 8-11, PageID.1360, 1371, 1439, 1469). While Plaintiff argues that her subjective complaints made in the course of therapy support the Griffin/Gotlib opinion, the mental status examinations repeatedly show mild psychological limitation. (ECF No. 8-9, PageID.1038; ECF No. 8-10, PageID.1125).

Plaintiff also notes the RFC reflecting moderate psychological limitation does not comport with any of the medical opinions: Griffin/Gotlib (marked limitation); Dr. Csokasy (no limitation); or P.A. Noger (no significant limitation). However, the ALJ was not required to adopt any one opinion verbatim so long as the RFC was supported by substantial evidence. It is well settled that an ALJ is permitted to draw from the record as a whole in crafting the RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. 2013) (rejecting contention ALJ was "bound" by one medical opinion - ALJ "properly based her RFC determination on all the evidence of record"). For the same reasons, the fact that P.A. Noger's opinion addresses Plaintiff's physical rather mental limitations does change the analysis; the RFC reflecting moderate psychological limitation is supported by substantial evidence drawn from the mental status exams and Plaintiff's reported activities. *See Tucker v Comm'r of Soc. Sec.*, 775 F. App'x

220, 224 (6th Cir. 2019) (ALJ did not err by relying in part on "largely normal" mental status examinations with "minimal or no impairment of memory, concentration, attention or judgment.").  While Plaintiff asserts without support that every mental status examination would show *some* normal findings provided that the patient is not "floridly psychotic," (ECF No. 18, PageID.1836), the mental status examinations showing consistently normal or adequate memory, concentration, and attitude generously support the finding that Plaintiff did not experience more than moderate psychological limitation.

Because the ALJ's conclusions regarding the opinion evidence are supported by the record and adequately explained, a remand on this basis is not warranted.

2.   Plaintiff's Allegations of Disability

Second, Plaintiff argues that the ALJ provided only a "boilerplate" explanation for rejecting her allegations of limitation.  (ECF No. 15, PageID.1805-08).  The Commissioner disputes Plaintiff's contention, noting that the ALJ provided a fulsome discussion of the medical evidence to support his findings.  (ECF No. 17, PageID.1830-31).  In reply, Plaintiff argues the ALJ failed to acknowledge that the subjective complaints take on increased significance in evaluating psychological symptoms.  (ECF No. 18, PageID.1840-41).

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process.  2016 WL 1119029, at *3 (Mar. 16, 2016).  First, the

ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* The ALJ acknowledged that the conditions of dysthymic disorder, major depressive disorder, anxiety, and agoraphobia were not only medically determinable impairments but caused more than minimal work-related limitations. (ECF No. 8-2, PageID.122-123).

Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. SSR 16-3p at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4; 20 C.F.R. §§ 404.1529(c)(3), 416.929.

Here, the ALJ's discussion and rejection of Plaintiff's subjective claims was anything but "boilerplate." First, the ALJ provided an exhaustive account of Plaintiff's testimony, functional report, and statements to the treating sources. (ECF No. 8-2, PageID.126). Then, the ALJ discussed the treating evidence undermining the claims of disability. He cited a mental status exam result from the month prior to the alleged onset of disability showing Plaintiff was calm and cooperative with normal/adequate speech, association, thought content, insight,

memory, judgment, and concentration.  (*Id*. at PageID.127).  He noted that exam

records from the following two months and again in December 2017 showed a

normal mental status despite a depressed mood and anxiety.  (*Id*. at PageID.128).

He cited Ms. Griffin's March 2018 records showing a fairly good mood, that

Plaintiff was not "overly anxious," and that she had proposed marriage to her

partner the previous month.  (*Id*.).  The ALJ cited July 2018 records showing a

normal mood, affect, and behavior.  (*Id*.).  The ALJ noted that Plaintiff's report of

stress from the next month were attributed to her upcoming marriage; changes to

her insurance; the prospect of moving and choosing a house; and her family's

reaction to the marriage.  (*Id*.).  He noted that the subsequent records showed an

essentially unchanged mental status.  (*Id*.).

　　　While Plaintiff contends that her subjective allegations received short shrift,

the ALJ permissibly concluded that the unremarkable mental status exams

undermined the unsupported claims. *See Calhoun v. Comm'r of Soc Sec*, 2020 WL

1307256, at \*4 (E.D. Mich. Jan. 13, 2020) (Grand, M.J.), *report and*

*recommendation adopted*, 2020 WL 1274902 (E.D. Mich, Mar. 17, 2020) (citing

*O'Connell v. Comm'r of Soc. Sec.*, 2015 WL 12683979, at \*8-11 (E.D. Mich. Nov.

25, 2015) ("ALJ properly discounted claimant's subjective complaints, in part,

because they were inconsistent with mental status examination findings.")).

Likewise here, Plaintiff's fairly normal mental status examinations, coupled with

treating records showing that she was able to engage in a variety of activities undermine her claims of disability-level psychological limitation.

Because the administrative findings are well supported and explained, the deference generally accorded an ALJ's credibility determination is appropriate here. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (ALJ's evaluation of the subjective claims entitled to deference).

### 3. The VE's Job Findings

In her final argument, Plaintiff argues that the hypothetical question posed to the VE did not reflect her moderate limitations in concentration, persistence, or pace ("CPP") thus invalidating the VE's corresponding job testimony. (ECF No. 15, PageID.1808-1810). Citing *Ealy v. Comm'r of Social Sec.*, 594 F.3d 504 (6th Cir. 2010), she contends that the ALJ failed to consider her alleged inability to "concentrate over a period of time, persist at tasks, or capacity to work at a particular pace over a workday or workweek." (*Id*. at PageID.1809). The Commissioner contends that the ALJ's hypothetical modifiers of work involving simple instructions and work-related decisions; occasional interaction with supervisors and co-workers; a preclusion on tandem or team tasks and interaction with the public; and occasional changes in a routine work setting were sufficient to capture Plaintiff's psychological limitation. (ECF No. 17, PageID.1832) (citing (ECF No. 8-2, PageID.162-163)).

Plaintiff is correct that vocational testimony constitutes substantial evidence only if given in response to limitations accurately reflecting the claimant's physical and mental impairments. *Ealy*, 594 F.3d at 516; *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). While the Sixth Circuit has rejected the proposition that all of a claimant's maladies must be listed verbatim in the limitations posed to the VE, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] physical and mental impairments." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004).

However, Plaintiff's reliance on *Ealy* is unavailing for multiple reasons. First, the *Ealy* Court determined that the modifiers of "simple [and] repetitive" to account for moderate limitation in CCP (drawn from a non-examining medical source conclusion) impermissibly truncated the same source's conclusion that the claimant should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day *where speed was not critical*.'" *Ealy*, 594 F.3d at 516 (emphasis added). In contrast here, the ALJ's hypothetical modifiers include unskilled work limited to carrying out simple instructions, making simple work-related decisions, a preclusion on "tandem or team tasks," and only occasional "changes in a routine work setting." (ECF No. 8-2, PageID.162-163).

Second, Plaintiff's claim that the modifiers of "simple" and "repetitive" as found in *Ealy*, or the ALJ's choice of modifiers in this case are automatically

insufficient to capture moderate concentrational limitation is not supported by Sixth Circuit case law or cases from this District. *See Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 437, 2014 WL 4400999, *10 (6th Cir. 2014) (moderate concentrational limitations adequately addressed by restricting the claimant to unskilled, routine, repetitive work); *Lewicki v. Comm'r of Soc. Sec.y*, 2010 WL 3905375, *2 (E.D. Mich. Sept. 30, 2010) (the modifiers of "simple routine work" adequately accounted for the claimant's moderate deficiencies in CPP); *see also Schalk v. Comm'r of Soc. Sec.*, 2011 WL 4406824, *11 (E.D. Mich. Aug. 30, 2011) ("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations). Instead, "[b]ecause there is no bright-line rule requiring an ALJ to account for moderate [concentrational] limitations . . . in a certain way, the Court must – given the particular evidence in the case at hand – determine whether the limitations imposed by the ALJ adequately accounted for" the moderate limitation in CPP. *Bellman v. Comm'r of Soc. Sec.*, 2019 WL 1521994, at *8 (E.D. Mich. Mar. 20, 2019) (Grand, M.J.), *report and recommendation adopted*, 2019 WL 1515258 (E.D. Mich. Apr. 8, 2019).

In the present case, substantial evidence supports the ALJ's choice of modifiers. Most obviously, the mental status reports did not note any deficiencies in concentration or memory. While Plaintiff argues that the hypothetical question

did not account for her deficiencies in pacing or persistence, the preclusion on "tandem or team tasks" not only addressed Plaintiff's limitation in interacting with others but would also preclude assembly line work. Plaintiff's claim that she would be unable to perform unskilled, non-assembly line work in a setting with only occasional changes is also undermined by her testimony that she was able to perform her former semiskilled work competently until she was "loaned out" to different departments in her workplace where she would typically receive inadequate training and support. (ECF No. 8-2, PageID.108-111).

Because substantial evidence supports the conclusion that Plaintiff could perform unskilled, non-production work with only simple decisions and occasional changes, the ALJ's choice of hypothetical limitations, forming the basis of the RFC should not be disturbed. *See Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118–119 (6th Cir. 1994) (ALJ not required to incorporate unsubstantiated claims in hypothetical question to VE or by extension, the ultimate RFC).

### H. Conclusion

Plaintiff has the burden of proof on her statements of error. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED** and the

Commissioner's motion for summary judgment (ECF No. 17) is **GRANTED**, affirming the Commissioner's decision.

IT IS SO ORDERED.

Date: 7/16/2021                     s/Curtis Ivy, Jr.
                                    Curtis Ivy, Jr.
                                    United States Magistrate Judge